## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK JONES,                    :

           Petitioner         :

                         **CIVIL ACTION NO. 3:16-1522**

        v.                      :

                         **(Judge Mannion)**

DAVID J. EBBERT                :

           Respondent         :


## __MEMORANDUM__

      Patrick Jones, an inmate confined in the Coleman United States Penitentiary, Sumterville, Florida[1], filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges a disciplinary action against him, which occurred while he was incarcerated at the Lee United States Penitentiary, Jonesville, Virginia (USP-Lee). Id. Specifically, he claims that his due process rights were violated when he failed to receive the incident report within twenty-four hours; the Discipline Hearing Officer (DHO) altered the statement of his staff representative; and he received excessive sanctions. Id. For relief, he requests the Court "expunge incident report, restore all sanctions, release [him] from special

---

      [1]At the time of the filing, the petitioner was housed at the United States Penitentiary, Lewisburg, PA., within the Middle District of Pennsylvania.

management unit at Lewisburg" and "restore all good time taken for this incident." Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.  **Background**

On May 4, 2015 at approximately 7:45 p.m., Incident Report No. 2711758, charging Jones with possession of a weapon, a Code 104 violation, was delivered to Jones. (Doc. 1-1 at 3, Incident Report). The incident report reads as follows:

> On August 22, 2014, I reviewed VICONNET video footage related to the assault of a staff member at USP-Lee. Specifically, on August 17, 2014, the G-Unit Officer was assaulted by an inmate with an icepick type weapon. Evidence obtained during the subsequent investigation revealed that the weapon used in the assault was provided by Inmate Jones, Patrick, Reg. No. 11881-041. The video footage revealed that on August 16, 2014, at approximately 5:17 p.m., Inmate Billingsley, Dwight, Reg. No. 07279-028, is escorted to the Building #2 courtyard by inmate Jones. Jones proceeds to walk behind the benches located next to E-Unit where he begins digging up the grass and dirt in the area behind the benches. Jones reaches down, picks up the weapon, and hands the weapon to Billingsley before covering up the hole with his foot. Jones then departs the area, walking back to his cell in E-Unit. Inmate Billingsley proceeded to provide the weapon to inmate Vaught, Michael, Reg. No. 07740-028. The next day, on August 17, 2014, Vaught used the weapon Jones gave to Billingsley to assault a staff member. The weapon was approximately 8.5 inches in length, fashioned from metal and sharpened to a point on one end. A pair of black bootlaces was

2

tied around the bottom of the weapon to form a handle and a lanyard.

Id. The incident report was then suspended, due to it being referred to the FBI for possible prosecution. (Doc. 6-1 at 13 Discipline Hearing Officer Report).

On May 5, 2015, the FBI declined prosecution and released the incident report back to the BOP. Id. The incident report was re-written on May 19, 2015, "because section 11 had not given [Petitioner] proper notice of the charges against [him] to prepare [his] defense and the discipline process resumed." Id. The re-written misconduct, which charges Jones with attempted assault with serious bodily injury, in violation of Code 101(A) and possession of a dangerous weapon, a Code 104 violation, reads as follows:

> On August 22, 2014, I reviewed VICONNET video footage related to the assault of a staff member at USP-Lee. Specifically, on August 17, 2014, the G-Unit Officer was assaulted by an inmate with an icepick type weapon. Evidence obtained during the subsequent investigation revealed that the weapon used in the assault was provided by Inmate Jones, Patrick, Reg. No. 11881-041. The video footage revealed that on August 16, 2014, at approximately 5:17 p.m., Inmate Billingsley, Dwight, Reg. No. 07279-028, is escorted to the Building #2 courtyard by inmate Jones. Jones proceeds to walk behind the benches located next to E-Unit where he begins digging up the grass and dirt in the area behind the benches. Jones reaches down, picks up the weapon, and hands the weapon to Billingsley before covering up the hole with his foot. Jones then departs the area, walking back to his cell in E-Unit. Inmate Billingsley proceeded to provide the weapon to inmate Vaught, Michael, Reg. No. 07740-028. The

next day, on August 17, 2014, Vaught used the weapon Jones gave to Billingsley to assault a staff member. As a direct result of the assault, and due to the weapon provided by Jones to Billingsley, the staff member received multiple injuries including four puncture wounds to his lower back, upper torso, right side, and left side of his body. Additionally, the staff member was transported to an outside hospital for further medical attention. The weapon used by Vaught was approximately 8.5 inches in length, fashioned from metal and sharpened to a point on one end. A pair of black bootlaces was tied around the bottom of the weapon to form a handle and a lanyard.

(Doc. 6-1 at 18, Incident Report).

On May 21, 2015, re-written Incident Report No. 2711758, charging Jones with possession of a weapon, a Code 104 violation, and assaulting any person, a Code 101A violation, was delivered to Jones by staff member, M. Woods. (Doc. 1-1 at 4, Incident Report). The incident report was again suspended pending referral to the FBI/AUSA for possible prosecution after the re-write. (Doc. 6-1 at 13, Discipline Hearing Officer Report).

On May 25, 2015, the incident report was released and the disciplinary process resumed. Id.

On May 27, 2015, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 6-1 at 18, Committee Action). Based on the guidelines, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending "appropriate sanctions." Id. During the UDC hearing,

staff member, B. Carroll informed Jones of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 16, Inmate Rights at Discipline Hearing).

Also on May 27, 2015, Jones was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 15). Jones requested staff representative, Mr. Waycaster and witnesses Billingsley and Vaught.

On July 10, 2015, Jones appeared for a hearing before DHO, D. Rupert. (Doc. 6-1 at 21-24). Mr. D. Waycaster appeared on behalf of Jones. He made the following statement:

> Mr. Waycaster mentioned he had reviewed the recorded video at the inmate's request and observed the two of them. He observed one inmate (Jones) digging and one standing (Billingsley). He was able to follow each inmate to their specific housing unit where he further made a positive identification of Jones as the one inmate who was digging up the weapon and Billingsley as the one inmate who obtained the weapon from Jones.

Id. The DHO then read aloud Section 11 of the incident report and asked Petitioner to provide his statement. Id. Jones replied "It's been so long, I don't remember." Id. When his staff representative read his written inmate statement from Billingsley, Jones replied that he wished not to use Billingsley's statement. Id. He did not provide any other evidence for the DHO to consider on his behalf. Id.

Although witnesses Billingsley and Vaught were not housed at USP-Lee, they were requested to submit a written statement. Id. Inmate Vaught refused to provide a written statement or make any statement. Id. Witness Billingsley provided the following statement:

> On 8/16/2014, the camera shows myself and Pat Jones retrieving a knife. The knife is mine as I stated in court. Pat Jones wasn't a where (sic) of what was going to happen. I told him that I had to dig up my knife because it's almost bus day. He had nothing to do with the knife or the assault on staff.

Id.

In addition to the Incident Report and Investigation, the DHO also considered a photograph as documentary evidence. Id. The specific evidence relied on to support the findings was as follows:

> The DHO finds you committed the prohibited act of code 101(A), Assaulting With Serious Injury (Aiding), and code 104, Possession of a Dangerous Weapon, while incarcerated at USP Lee, on August 16, 2014, at approximately 1717, as staff reviewed recorded video surveillance, you were observed by staff digging up a weapon on the recreation yard and giving it to inmate BILLINGSLEY, Dwight, which was used to seriously assault a staff member on August 17, 2014.
>
> The following evidence relied on was the written report of J. Baker, SIS, wherein he reports on August 16, 2014, at approximately 1717, he reviewed VICONNET video footage related to the assault of a staff member at USP Lee. Specifically, on August 17, 2014, the G-Unit Officer was assaulted by an inmate with an icepick type weapon. Evidence obtained during the subsequent investigation revealed that the weapon used in the

assault was provided by you. The video footage revealed that on August 16, 2014, at approximately 5:17 p.m., inmate Billingsley, Dwight, Reg. No. 07279-028, is escorted to the Building #2 courtyard by you. You proceed to walk behind the benches located next to the E-Unit where you begin digging up the grass and dirt in the area behind the benches. You reached down, picked up the weapon, and hand the weapon to Billingsley before covering up the hold with your foot. You then depart the area, walking back to your cell in E-Unit. Billingsley proceeded to provide the weapon to inmate Vaught, Michael, Reg. no. 07740-028. The next day, on August 17, 2014, Vaught used the weapon you gave to Billingsley to assault a staff member. As a direct result of the assault, and due to the weapon provided by you to Billingsley, the staff member received multiple injuries including four puncture wounds to his lower back, upper torso, right side, and left side of his body. Additionally, the staff member was transported to an outside hospital for further medical attention. The weapon used by Vaught was approximately 8.5 inches in length, fashioned from metal and sharpened to a point on one end. A pair of black bootlaces was tied around the bottom of the weapon to form a handle and a lanyard.

You made no comment to the Investigating Office. During your UDC hearing you make no comment. During your DHO you neither admitted nor denied the charge only that you couldn't remember because it was a long time ago.

In conclusion, the DHO based his decision giving greater weight to the evidence presented at the hearing. The DHO gave greater weight to the reporting employee wherein he observed your behavior of digging up the weapon and giving it to Billingsley which at your request of video review by your staff representative statement collaborated the reporting employee account of the incident. The DHO considered your witness statement from Billingsley and you not wanting to use his written statement where he mentioned you had nothing to do with the knife or assault on staff by gave greater weight to the fact he places you along with him in retrieving the knife which matches the reporting employee

description of your behavior and the knife. The DHO considered the photograph of the weapon as it depicted the reporting employee account of the incident. The DHO can't discern whether you were aware of Billingsley's intent was with the knife you had given him but gave greater weight to the fact you aided Vaught by providing Billingsley with the weapon he used to assault staff. Officer Collins received serious burns to his neck, four puncture wounds to his lower back, upper torso, right side and left side of his body. Additionally, the staff member was transported to an outside hospital for further medical attention.

Accordingly, the DHO finds you violated code 101(A), Assaulting with Serious Injury and code 104, Possession of a Dangerous Weapon, of the Inmate Discipline Policy.

Id. The DHO sanctioned Jones on the Code 101 violation to disallowance of forty-one (41) days Good Conduct Time; one year non-contact visiting; and one year loss of phone privilege, suspended for 90 days. Id. On the Code 104 charge, the DHO sanctioned Jones to ninety (90) days disciplinary segregation; loss of forty-one (41) days Good Conduct Time; one year loss of commissary; and forfeiture of 147 days non-vested Good Conduct Time.

Id. The DHO documented his reasons for the sanctions given as follows:

The action/behavior on the part of any inmate to seriously assault or injury another person, whether another inmate or staff member, poses a serious threat not only to himself, but to the health, safety and welfare of all others. As a serious assault was carried out or attempted, the charge was found to be appropriate. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

> To hold you accountable for your actions in this instance, the DHO has sanctioned to a disallowance of 41 days Good Conduct, non-contact visiting privileges for 1 year, and loss of phone privileges for 1 year, suspended for 90 days.
>
> The action/behavior on the part of any inmate to possess, manufacture or introduce any type of weapon, firearm, or knife capable of inflicting serious injury to another person, whether another inmate or staff member, threatens the health, safety and welfare of not only the inmate involved, but all other inmates and staff alike. In the past, this action/behavior has been shown to result in serious injuries. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.
>
> To hold you accountable for your actions in this instance, the DHO has sanctioned to a disallowance of 41 days Good Conduct Time, Loss of commissary privileges for 1 year, forfeiture of 147 days non-vested Good Conduct and 90 days of disciplinary segregation.
>
> The disallowance of Good Conduct Time sanctions were imposed as required by Sentencing Guidelines (PLRA) as well as a deterrent from future misconduct. The forfeiture of non-vested good time sanctions was imposed as a constant reminder that your involvement in misconduct will prolong your incarceration. The disciplinary segregation, and loss of privilege sanctions were imposed as an immediate deterrent from future misconduct.
>
> The DHO hopes these sanctions will convince you to abide by all institution rules and regulations and will also emphasize to you this type of behavior will not be tolerated.

Id. Jones was advised of his appeal rights at the conclusion of the hearing. Id.

Jones appealed the DHO's decision to the BOP's Mid-Atlantic Regional Director. (Doc. 6-1 at 26, Administrative Remedy No. 830694-R1). The

Regional Director reviewed the DHO report and found that the DHO "accurately and adequately explained to you in Section V of the amended DHO report the specific evidence relied on to find you committed the prohibited act." Id. He additionally found that disciplinary procedures were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offense." Id. However, pursuant to BOP Program Statement 5270.09, Inmate Discipline Program, the Regional Director determined that "Section 11 of the incident report and the evidence support Code 104, Possession of a Weapon, but not the separate act of Assisting in an Assault, Resulting in Serious Injury. The discipline record has been amended to reflect this decision. The DHO has also amended Section V of the DHO report to more adequately address your defense to the charge. You will receive an amended incident in the very near future." Id.

On September 9, 2015, the DHO issued an amended DHO report in accordance with the Regional Director's findings, amending the "Findings and Sanctions" portions of the report, to reflect the following:

> The DHO finds you committed the prohibited act of code 104, Possession of a Dangerous Weapon, while incarcerated at USP Lee, on August 16, 2014, at approximately 1717, as staff reviewed recorded video surveillance, you were observed by staff digging up a weapon on the recreation yard and giving it to inmate BILLINGSLEY, Dwight.

The following evidence relied on was the written report of J. Baker, SIS, wherein he reports on August 16, 2014, at approximately 1717, he reviewed VICONNET video footage related to the assault of a staff member at USP Lee. Specifically, on August 17, 2014, the G-Unit Officer was assaulted by an inmate with an icepick type weapon. Evidence obtained during the subsequent investigation revealed that the weapon used in the assault was provided by you. The video footage revealed that on August 16, 2014, at approximately 5:17 p.m., inmate Billingsley, Dwight, Reg. No. 07279-028, is escorted to the Building #2 courtyard by you. You proceed to walk behind the benches located next to the E-Unit where you begin digging up the grass and dirt in the area behind the benches. You reached down, picked up the weapon, and hand the weapon to Billingsley before covering up the hole with your foot. You then depart the area, walking back to your cell in E-Unit. Billingsley proceeded to provide the weapon to inmate Vaught, Michael, Reg. no. 07740-028. The next day, on August 17, 2014, Vaught used the weapon you gave to Billingsley to assault a staff member. As a direct result of the assault, and due to the weapon provided by you to Billingsley, the staff member received multiple injuries including four puncture wounds to his lower back, upper torso, right side, and left side of his body. Additionally, the staff member was transported to an outside hospital for further medical attention. The weapon used by Vaught was approximately 8.5 inches in length, fashioned from metal and sharpened to a point on one end. A pair of black bootlaces was tied around the bottom of the weapon to form a handle and a lanyard.

You made no comment to the Investigating Office. During your UDC hearing you make no comment. During your DHO you neither admitted nor denied the charge only that you couldn't remember because it was a long time ago.

In conclusion, the DHO based his decision giving greater weight to the evidence presented at the hearing. The DHO gave greater weight to the reporting employee wherein he observed your behavior on video footage revealed that on August 16, 2014, at

approximately 5:17 p.m., inmate Billingsley, Dwight, Reg. No. 07279-028, is escorted to the Building #2 courtyard by you. You proceed to walk behind the benches located next to E-Unit where you begin digging up the grass and dirt in the area behind the benches. You reached down, picked up the weapon, and hand the weapon to Billingsley before covering up the hole with your foot. You then depart the area, walking back to your cell in E-Unit. The DHO considered and gave greater weight to your staff representative statement. Mr. Waycaster mentioned he had reviewed the recorded video at your request and observed your and Billingsley. He observed you digging and Billingsley standing. He was able to follow each of you to your specific housing unit where he further made a positive identification of you as the one inmate who was digging up the weapon and Billingsley as the one inmate who obtained the weapon from you. The DHO considered your witness statement on August 16, 2014 the camera shows myself, (Billingsley) and Pat Jones retrieving a knife. The knife is mine as I stated in court. Pat Jones wasn't a where of what was going to happen. I told him that I had to dig up my knife because it's almost bus day. He had nothing to do with the knife or the assault on staff giving greater weight to the fact he identifies you as being with him and identifies it as a knife. The DHO considered he mentioned you were with him, but that he dug up the knife but the DHO have greater weight to your staff representative and reporting employee identified you as digging up the knife not Billingsley. The DHO considered the photograph of the weapons as it depicted the reporting employee account of the incident.

Accordingly, the DHO finds you violated code 104, Possession of a Dangerous Weapon, of the Inmate Discipline Policy and dropped code 101(A).

(Doc. 6-1 at 11-14). The DHO sanctioned Jones to ninety (90) days disciplinary segregation; loss of forty-one (41) days Good Conduct Time; one year loss of commissary; and forfeiture of 147 days non-vested Good Conduct

Time. The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to possess, manufacture or introduce any type of weapon, firearm, or knife capable of inflicting serious injury to another person, whether another inmate or staff member, threatens the health, safety and welfare of not only the inmate involved, but all other inmates and staff alike. In the past, this action/behavior has been shown to result in serious injuries. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

> To hold you accountable for your actions in this instance, the DHO has sanctioned to a disallowance of 41 days Good Conduct Time, Loss of commissary privileges for 1 year, forfeiture of 147 days non-vested Good Conduct and 90 days of disciplinary segregation.

> The disallowance of Good Conduct Time sanctions were imposed as required by Sentencing Guidelines (PLRA) as well as a deterrent from future misconduct. The forfeiture of non-vested good time sanctions was imposed as a constant reminder that your involvement in misconduct will prolong your incarceration. The disciplinary segregation, and loss of privilege sanctions were imposed as an immediate deterrent from future misconduct.

> The DHO hopes these sanctions will convince you to abide by all institution rules and regulations and will also emphasize to you this type of behavior will not be tolerated.

Id. Jones was advised of his appeal rights at the conclusion of the hearing. Id.

## II.    **Discussion**

Liberty interests protected by the Fifth Amendment may arise either

from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at

563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on

severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of

the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Jones was afforded all of the required procedural rights set forth in Wolff. To the extent that Petitioner argues that 28 C.F.R. §541.5(a) was violated because he was not served with the incident report within 24 hours of staff becoming aware of the incident, 28 C.F.R. §541.5(a) provides that "[t]he discipline process starts when staff witness or reasonably believe" that an inmate has committed a prohibited act and that an incident report will be delivered to the inmate "ordinarily" within 24 hours of staff becoming aware of the inmate's involvement. The Court finds that the use the word "ordinarily" clearly allows for situations where an inmate may not receive the incident report within 24 hours. See Scott v. Martinez, 2009 WL 790143, slip op. at *3 (M.D. Pa. Mar. 20, 2009 (Kane, C.J.) ("use of the word 'ordinarily' clearly provides the BOP with some discretion"). Even if this regulation was violated, Jones cannot show that his right to due process was violated at his hearing, especially where Wolff does not require issuance of the charge within 24 hours of the incident. Wolff only requires that an inmate receive written notice of the charges 24 hours before a hearing. Here, record evidence clearly demonstrates that Jones was timely served with re-written incident report No. 2711758 on May 21, 2015, which was well within

the prescribed 24 hour period prior to his original disciplinary hearing, held on July 10, 2015. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf.

Jones' next claim is that the DHO's summary of his staff representative's statement regarding the prison video was altered or falsified. The Court finds no support in the record for this claim, and, in fact, finds that the DHO's summary of the staff representative's statement essentially matches the statement he provides in his declaration, attached as an exhibit to the response in the instant action. (Doc. 6-1 at 51). Thus, Petitioner's second claim lacks merit.

Jones received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision, and was notified of his right to appeal.

Since Jones was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Jones alleges there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be

upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary

committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of both testimony offered and documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report, witness statement, representative statement and a photograph. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 100-level, greatest severity level prohibited acts. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 100-level offenses:

A.    Recommend parole date rescission or retardation.
B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.    Disciplinary segregation (up to 12 months)
D.    Make monetary restitution.
E.    Monetary fine.

F.     Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
G.     Change housing (quarters).
H.     Remove from program and/or group activity.
I.      Loss of job
J.     Impound inmate's personal property.
K.     Confiscate contraband.
L.     Restrict to quarters.
M.    Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III.    <u>Conclusion</u>

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 21, 2019**
16-1522-01

21